## S06A0531. PHILLIPS v. THE STATE.
### (632 SE2d 131)

HINES, Justice.

Johnny Vernon Phillips appeals his conviction for malice murder in connection with the death of Paul McKeen, Jr. For the reasons that follow, we affirm.[1]

Construed to support the verdict, the evidence showed that Phillips was a friend and associate of a drug dealer named Charles Aldon Bulloch. McKeen owed Bulloch money for a cocaine purchase. A week prior to McKeen's death, Bulloch threatened to beat McKeen if he did not pay the money. On the evening of February 27, 1990, McKeen was with his wife in a bar called "The Pub." Phillips and Bulloch were also there with co-defendants, Guy Walter Hardaway and James Randall Reagan. McKeen and Bulloch played a game of pool, with the stakes being "double or nothing" on a debt; Bulloch won the game. McKeen's wife left him in the company of Reagan and another man who was not charged with this crime.

Later that evening, Phillips and Bulloch took McKeen in Bulloch's Mustang convertible to an overlook on Pine Mountain. Michael Railey followed them there in order to buy drugs from Bulloch. When Railey approached Bulloch's car, McKeen asked him for a ride back to The Pub. Phillips, seated in the back seat of the Mustang with McKeen, refused to let him go. Phillips told Railey that McKeen would stay with them because he was either going to pay the money he owed or be beaten.

---

[1] McKeen was killed on February 28, 1990. On September 14, 2004, a Harris County grand jury indicted Phillips, Charles Aldon Bulloch, James Randall Reagan, and Guy Walter Hardaway for malice murder, felony murder in the commission of kidnapping, and two counts of kidnapping with bodily injury. The four were tried together with separate counsel before a jury on February 28-March 4, 2005. The two counts of kidnapping with bodily injury were dismissed as barred by the statute of limitation. Phillips was found guilty on March 4, 2005 of malice murder and felony murder; the felony murder stood vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). That same day, Phillips was sentenced to life in prison. Phillips filed a notice of appeal on March 10, 2005. Phillips's trial counsel moved to withdraw on March 25, 2005, and, through new counsel, Phillips filed a motion for new trial on March 25, 2005. The trial court approved the withdrawal motion on April 6, 2005. Phillips filed an amended motion for new trial on September 13, 2005. The trial court denied the amended motion on September 27, 2005. On October 20, 2005, Phillips filed an amended notice of appeal. The appeal was docketed in this Court on November 30, 2005, and submitted for decision on January 23, 2006.

The next morning, Bulloch went to the home of Robert Pearson. Pearson regularly monitored police scanners; Bulloch asked Pearson if he had heard anything about "anything on top of the mountain." He also told Pearson that he would be leaving town for a bit because he, Phillips, Hardaway, and Reagan had severely beaten "that McKeen boy" because of a debt. Bulloch also said that McKeen "wouldn't ever owe me no more money." Pearson also related that Bulloch said that "when [Phillips] got started that [Bulloch] couldn't stop him; that [Phillips] ending up hitting [McKeen] with a tire tool."

That same morning, McKeen was found unconscious and barely alive beside a remote road. He was taken to a hospital where doctors determined that blunt-force trauma to the head had caused severe brain damage. He died several days later.

1. Phillips asserts that the trial court erred when it denied his motion for directed verdict based on insufficient evidence. Phillips specifically argues that the evidence was inadequate to establish the cause of death. The State presented the testimony of the emergency room physician who treated McKeen upon his arrival at the hospital. He testified that McKeen had been beaten with a blunt instrument, and received multiple, and serious, blows to the head; McKeen's brain injuries were such that he would not live if taken off life support systems. The physician testified that McKeen was later removed from life support systems, and died.

Phillips asserts that this physician's role was limited to efforts to "resuscitate the patient and get him admitted to intensive care," that he was not involved with McKeen's treatment after the patient left the emergency room, that McKeen was in the care of other physicians both when the decision was made to remove life support and at the time of his death, and that the witness's testimony concerning the cause of death was therefore speculative. But, the testimony of the final attending physician, or that of the person who conducted the autopsy, is not a legal necessity for a conviction. See *Curtis v. State*, 224 Ga. 870 (1) (165 SE2d 150) (1968) (even without an autopsy, testimony of a physician as to the life-threatening nature of visible wounds was sufficient evidence to establish the cause of death and to support a guilty verdict). The evidence authorized the jury to find that McKeen died as a result of blows inflicted by Phillips, and to find Phillips guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Phillips contends that he did not receive effective representation because his trial counsel did not present certain alibi evidence and because counsel failed to consult adequately with Phillips prior to trial. In order to prevail on a claim of ineffective assistance of counsel, Phillips must show both that counsel's performance was

deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong, Phillips must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Phillips asserts that his trial attorney knew of two witnesses that could have placed Phillips at his mother's home on the night of McKeen's murder. Laverne Warren, Phillips's mother, testified at the hearing on the motion for a new trial that Phillips never left her home on the night of February 27, 1990, and that she would have been prepared and willing to swear to this at Phillips's trial. Phillips's son, Josh Phillips, who was 11 years old at the time of the murder, testified at the hearing similarly to Warren. Warren also testified that before trial she did not speak with counsel, but did answer questions from someone from counsel's office; she had no memory of what was discussed. Judy Kelley, who was Phillips's fiancée at the time of the murder, testified that she had alerted counsel that Warren could provide an alibi. Also, Phillips's former wife testified that she told counsel that she was at The Pub on the night of the murder, and that Phillips was not there.

Phillips testified that he told counsel about his alibi and his former wife's denial that he was at The Pub on the night of the murder, but that counsel opined that his mother would not be seen as reliable, and that counsel feared Phillips's former wife would change her story.

Counsel testified at the hearing on the motion for a new trial that although Phillips offered multiple alibi defenses, he did not tell counsel that he was at his mother's home on the night of the murder. Rather, Phillips said that he was in jail in Warner Robins that night. When counsel's investigations proved this to be untrue, Phillips said that he was with his former wife in another part of the state. Counsel was also unable to verify this second story; no one told him that Phillips was at his mother's house. In any event, he did not consider Phillips's mother a good source of defense evidence because her

extensive history of substance abuse presented a major obstacle to her credibility. Also, counsel did not want Judy Kelley "anywhere near the trial" because she had previously posed as a reporter conducting interviews about the murder and counsel believed there was a high probability of that fact damaging Phillips's defense.

Counsel also testified that he did not want to introduce any evidence in order to preserve the right to opening and closing argument, which he viewed as a particularly effective strategy in this case since four defense attorneys would be able to obfuscate the State's case.[2] This is a decision involving trial strategy. *Brown v. State*, 268 Ga. 354, 357 (4) (a) (490 SE2d 75) (1997). Counsel viewed the State's evidence as weak, inasmuch as it was based on the testimony of drug addicts about events 15 years in the past. Not only has Phillips failed to show that counsel's strategy was not reasonable, given the credibility issues associated with the proposed witnesses, there is no reasonable probability that the decision not to call them prejudiced Phillips.

As to Phillips's contention that trial counsel was ineffective because counsel failed to consult adequately with him, counsel testified to extensive telephone conversations with Phillips regarding his case, and several meetings. There is no requirement concerning the specific amount of time that defense counsel must spend with a client. *Mitchell v. State*, 279 Ga. 158, 160 (2) (611 SE2d 15) (2005). Further, Phillips advances nothing that suggests that further meetings would have produced a different result at trial. Rather, Phillips presented evidence at the hearing on his motion for a new trial that counsel had, in fact, been provided with all the information that Phillips now asserts would have been discovered by further preparation on counsel's part. Thus, Phillips fails to satisfy the actual prejudice prong of the *Strickland* test.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 6, 2006.

*Robert L. Wadkins, David E. Webb,* for appellant.

*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.

---

[2] Although the four defense attorneys agreed to this strategy, at trial Bulloch presented evidence including his own testimony.