## A08A0659. KILBY v. THE STATE.
(657 SE2d 567)

BLACKBURN, Presiding Judge.

Following a jury trial, David Wayne Kilby appeals his conviction for stalking[1] and making harassing phone calls.[2] He challenges the sufficiency of the evidence and also argues that the trial court erred in denying his motion for new trial that asserted claims of "newly discovered" evidence and ineffective assistance of counsel. We hold that the evidence sustained the conviction, that Kilby knew of the "newly discovered" evidence before trial, and that evidence supported the trial court's findings underlying its conclusion that Kilby failed to show ineffective assistance. Accordingly, we affirm.

1. When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*.[3] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*.[4]

---

[19] *Tessmer v. State*, 273 Ga. 220, 225 (6) (539 SE2d 816) (2000).

[1] OCGA § 16-5-90 (a) (1).

[2] OCGA § 16-11-39.1 (a).

[3] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that Kilby lived with his girlfriend for some years until she moved out in late 2005. They nevertheless continued a sporadic relationship until the last week of September 2006, when she told him the relationship was over and that she no longer wished to have contact with him. He refused to accept this, telling her that the relationship was not over until he said it was over. Despite her insistent demand for no contact, from September 28 until October 13, 2006, he repeatedly and frequently called her on her cell phone while she was at work, during which he would become irate, threaten her, tell her she would "pay" for what she had done, and use profanity to upset her. On several occasions, she put the call on the speaker phone so that her co-workers could corroborate his abusive, angry language. She taped two of the threatening conversations, which audio tapes were played for the jury. Another phone call occurred while she was a passenger in a co-worker's car on a business matter, during which he announced he knew she was in that car (thus indicating he was following her) and interrogated her about her activities. Finally, during this same time period, Kilby parked near the now ex-girlfriend's workplace or drove his vehicle into the parking lot of her workplace while she was at work, even though he had no business reason for being anywhere near her workplace. These phone calls and appearances at her workplace (and his following her) caused the ex-girlfriend great distress and made her fear for her life.

This evidence sufficed to sustain Kilby's conviction. With regard to the stalking charge, OCGA § 16-5-90 (a) (1) provides that "[a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." "Place or places" is defined as anywhere other than the defendant's residence. Id.

> "[H]arassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety . . . , by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

Id.

Here, the evidence shows that over the ex-girlfriend's objection, Kilby followed and surveilled her at or near her workplace. Because he had no valid reason for being anywhere near there, and because

such caused the ex-girlfriend emotional distress by placing her in fear for her life, this evidence sustained the stalking conviction. See *Thomas v. State*.[5]

With regard to the charge for making harassing phone calls, the record contains sufficient evidence of the crime. OCGA § 16-11-39.1 (a) provides that "[a] person commits the offense of harassing phone calls if such person telephones another person repeatedly, whether or not conversation ensues, for the purpose of annoying, harassing, or molesting another person [or] uses over the telephone language threatening bodily harm. . . ." Here, Kilby repeatedly called the ex-girlfriend despite her insistence that he not do so, during which calls he frightened her by abusively berating her with profanity and threatening her with language that implied bodily harm. Such sufficed to sustain a conviction on this charge. See *Sams v. State*.[6]

Kilby contends that some evidence showed that his phone calls to the ex-girlfriend occurred with her consent, in that she placed numerous phone calls to Kilby from September 1 through October 5. Setting aside that this evidence does not necessarily contradict that Kilby repeatedly phoned her from September 28 to October 13 for the purpose of harassing and threatening her, we note that even if it did, such an evidentiary conflict was a question for the jury to resolve, not this Court.

2. In his second enumeration, Kilby claims that the trial court erred in denying his motion for new trial insofar as it asserted that some "newly discovered" evidence mandated a new trial. Specifically, Kilby points out that a pastor at his church, who testified at the hearing on the motion for new trial, witnessed the ex-girlfriend come fearlessly to Kilby's church several times (after she had allegedly terminated the relationship and was frightened of him) to confront Kilby in an attempt to provoke him to anger. However, of the six factors a defendant must show under *Timberlake v. State*[7] to justify a new trial due to "newly discovered" evidence, the first factor is that the defendant first learned of the evidence after the trial. *Lester v. State*.[8] Here, Kilby testified at the hearing on the motion for new trial that he not only knew of this evidence prior to trial, but that prior to trial, both he and his new wife asked trial counsel to interview this pastor regarding this very testimony. "Because [Kilby] cannot satisfy the first *Timberlake* requirement, the trial court did not abuse its discretion in denying [Kilby's] motion for a new trial on the basis of

[5] *Thomas v. State*, 276 Ga. App. 79, 80 (1) (622 SE2d 421) (2005).
[6] *Sams v. State*, 271 Ga. App. 617, 618-619 (610 SE2d 592) (2005).
[7] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).
[8] *Lester v. State*, 278 Ga. App. 247, 253 (6) (628 SE2d 674) (2006).

evidence that was, at most, newly available, not newly discovered." *Lester*, supra, 278 Ga. App. at 253 (6). See *Hester v. State*[9] ("[f]ailure to establish even one requirement of *Timberlake* is sufficient to deny a motion for new trial").

3. In his third enumeration, Kilby argues that the trial court erred in denying his motion for new trial insofar as it asserted a claim of ineffective assistance of counsel. Specifically, Kilby contends that his trial counsel failed to (i) adequately investigate and prepare the case, (ii) cross-examine the ex-girlfriend regarding a conviction for false reporting, and (iii) speak with the pastor about his observations of the ex-girlfriend's behavior at his church.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficiency so prejudiced him that a reasonable likelihood exists that but for counsel's deficiency, the outcome of the trial would have been different.

*Garvin v. State.*[10] See *Strickland v. Washington.*[11]

With regard to the allegation of insufficient trial preparation and investigation, Kilby claims that his counsel spent insufficient time interviewing him, even though he himself testified to hours of conversations with counsel on the phone. His counsel also testified that she spent numerous hours interviewing him on the phone (he chose not to come in for face-to-face interviews), and that she contacted each and every person he identified as a potential witness, including members and pastors of his church. She also interviewed the victim and her co-workers. In consultation with Kilby, she developed the defense that the victim was actually stalking him.

"There exists no magic amount of time which counsel must spend in actual conference with his client." (Punctuation omitted.) *Garvin*, supra, 283 Ga. App. at 245 (3) (b). See *Phillips v. State.*[12] Some evidence supported the trial court's finding that trial counsel spent sufficient time investigating and preparing the case; accordingly, we cannot say the trial court clearly erred. Moreover, Kilby "offers no explanation of how additional communications with his lawyer would have changed the outcome of this trial." (Punctuation omitted.) *Giddens v. State.*[13] See *Phillips*, supra, 280 Ga. at 731 (2). The trial

---

[9] *Hester v. State*, 282 Ga. 239, 242 (3) (647 SE2d 60) (2007).

[10] *Garvin v. State*, 283 Ga. App. 242, 244 (3) (641 SE2d 176) (2006).

[11] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[12] *Phillips v. State*, 280 Ga. 728, 731 (2) (632 SE2d 131) (2006).

[13] *Giddens v. State*, 276 Ga. App. 353, 357 (3) (a) (623 SE2d 204) (2005).

court did not abuse its discretion in denying his motion for new trial on this claim. See *Giddens*, supra, 276 Ga. App. at 357 (3) (a).

With regard to the claim that trial counsel failed to cross-examine the victim on a conviction of false reporting, trial counsel testified that she reviewed the victim's arrest and conviction record and saw nothing about any such alleged conviction. Not only did this support a finding that no "false reporting" conviction existed, but Kilby failed to present any competent evidence of the alleged "false reporting" conviction at the hearing on the motion for new trial; thus, Kilby could make no "showing of prejudice, i.e., that the use of the conviction would have made a difference in the outcome of his trial." *Baskin v. State*.[14]

With regard to the allegation that trial counsel failed to interview the pastor who witnessed the victim's coming to his church to confront Kilby, trial counsel testified that she contacted each and every person identified to her by Kilby, including pastors and members of his church. Kilby testified that he identified this pastor to trial counsel. Trial counsel specifically recalled a witness who spoke of the victim's coming to Kilby's church. Based on trial counsel's testimony, the trial court was authorized to resolve this dispute in favor of the State and to find that this interview did in fact occur. See *Garvin*, supra, 283 Ga. App. at 245 (3) (b).

As evidence supported its findings, the trial court did not clearly err in concluding that Kilby failed to carry his burden of showing ineffective assistance of counsel. Accordingly, the trial court did not abuse its discretion in denying Kilby's motion for new trial on these grounds.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JANUARY 31, 2008.

*E. Suzanne Whitaker*, for appellant.

*Charles A. Spahos, Solicitor-General, Gilbert A. Crosby, Jefferson F. Upchurch, Assistant Solicitors-General*, for appellee.

---

[14] *Baskin v. State*, 267 Ga. App. 711, 714 (1) (b) (600 SE2d 599) (2004).