S07A0878. HESTER v. THE STATE.
(647 SE2d 60)

THOMPSON, Justice.

A jury convicted Thomas Wright Hester of malice murder and other offenses arising from the strangulation and stabbing death of his mother, Anita Gayle Hester.[1] On appeal, Hester asserts that the

---

[1] The crimes were committed on June 6, 2002. A grand jury indicted Hester on July 16, 2002, charging him with malice murder, possession of cocaine, possession of a knife during the commission of a crime, armed robbery, and theft by taking a motor vehicle. Trial commenced on March 29, 2004, and a jury found Hester guilty as charged on March 31, 2004. The trial court sentenced Hester on April 5, 2004 to life imprisonment for murder, plus twenty consecutive years for armed robbery, five consecutive years for possession of a weapon, and concurrent terms for the remaining offenses. A motion for new trial was filed on April 30, 2004, and was

trial court erred in denying his motion for new trial based, in part, on newly discovered evidence, as well as on the general grounds, and he challenges the denial of a motion to suppress his custodial statement. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence showed that Hester's mother was found dead in the bedroom of her home. A knife was imbedded in the victim's neck and the cord of a curling iron was looped twice around her neck and tied tightly. There was no evidence of forced entry. The victim's handbag and a portion of a mop handle were on the floor near her bed, and an open wallet was found on top of her dresser. The cause of death was sharp force neck trauma associated with manual and ligature strangulation.

Hester lived in the second bedroom of his mother's home. Certain items of Hester's clothing were seized from his bedroom and were found to be stained with the victim's blood. On the morning following the murder, Hester drove his mother's car to a bank where he forged and cashed a $712 check on her account, and used the proceeds to purchase cocaine. He was arrested the next day at a bank while attempting to negotiate yet another one of his mother's checks.

Hester was taken into custody where he waived *Miranda* rights and confessed to the murder, relating details of the crime scene that had not previously been revealed. He also confessed that he took $150 in cash from his mother's handbag as well as some blank checks, and that he left the scene in her car.

1. The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Hester was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. We find no error in the trial court's refusal to direct verdicts of acquittal as to the counts charging Hester with armed robbery and theft by taking a motor vehicle. The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. Id. Hester confessed that after killing his mother he took cash and blank checks from her purse and drove away in her car. "It is well-settled that a defendant commits a robbery if he kills the victim first and then takes the victim's property." *Lee v. State*, 270 Ga. 798, 801 (5) (514 SE2d 1) (1999). See also *Francis v. State*, 266 Ga. 69 (1) (463 SE2d 859) (1995) (conviction for armed robbery authorized where theft was completed after force was used against the victim).

denied on August 25, 2005. A notice of appeal was filed on September 21, 2005. The case was docketed in this Court on March 1, 2007, and was submitted for a decision on briefs on April 23, 2007.

Accordingly, a directed verdict of acquittal was not authorized. *Jackson v. Virginia*, supra. See also *Adkins v. State*, 279 Ga. 424 (2) (614 SE2d 67) (2005).

3. Hester contends the trial court erred in denying his motion for new trial based on newly discovered evidence. A trial court's denial of a motion for new trial will not be reversed unless it affirmatively appears that the court abused its discretion. *Young v. State*, 269 Ga. 490 (2) (500 SE2d 583) (1998).

Evidence adduced at an evidentiary hearing and affidavits appended to Hester's motion established that following Hester's conviction, Hester's father received information from Georgia Mae Corbett, a regular supplier of cocaine to Hester and his friends, and her husband Ronald Leroy Corbett, that Sheldon Vickers had committed the murder. The Corbetts testified at the hearing on the motion for new trial that several days after the murder, they were visited by Sheldon Vickers and Vickers' girlfriend. The four spent several hours together while they consumed about a dozen quarts of beer. During the course of that visit, Georgia Mae asked Vickers to tell her what happened at the time of Gayle Hester's murder. Vickers responded that he and Hester had been drinking and using cocaine on the day of the murder; Hester told him that his mother had a large sum of money in preparation for a trip; the two drove to Hester's home where Hester collapsed from intoxication; Vickers entered the house and argued with the victim; a scuffle ensued and Vickers dragged the victim to her bedroom where he burned her with a hot curling iron and then stuck a knife into her throat; blood was "gushing" from her wound; and they continued to fight for an additional 45 minutes.

After that conversation, Georgia Mae called Captain Arnold of the Lowndes County Sheriff's Department and reported that Vickers had bragged about killing Gayle Hester. Captain Arnold testified at the hearing on the motion for new trial that he was not involved in the Gayle Hester murder investigation but that he orally passed the information along to the appropriate case investigators; he generated no written notes or reports of his conversation with Georgia Mae. The investigating officers told Captain Arnold that Vickers' description of the murder scene contained factual inaccuracies, and Arnold never heard any more from the officers about the case.[2]

After considering Hester's evidence and the State's counterevidence, the court applied the criteria of *Timberlake v. State*, 246 Ga. 488 (1) (271 SE2d 792) (1980), which must be met in order to obtain

---

[2] It was established through forensic testimony at Hester's trial that the knife wound did not result in much external blood loss because the weapon had not been removed from the throat; that the victim did not suffer any burns; and there was no evidence of defensive wounds.

a new trial on the ground of newly discovered evidence. As set forth in *Timberlake*, it is incumbent that the movant satisfy the court

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

Id. at 491.

After considering the evidence in support of the motion for new trial and reviewing the trial transcript, the trial court denied the motion, concluding that the newly discovered evidence would not reasonably have produced a different verdict. Failure to establish even one requirement of *Timberlake* is sufficient to deny a motion for new trial. *Timberlake*, supra at 491; *Young*, supra at 493, fn. 5.

Hester mounted a vigorous defense at trial advancing the theory that Vickers was the killer. The defense called several witnesses to support that claim, including one witness who testified that Vickers admitted killing Gayle Hester and burning her face with her curling iron, as well as Vickers himself who was examined at length but denied his culpability.

We cannot say, after reviewing the record as a whole, that the trial court abused its discretion in denying the motion for new trial. See id.

4. Hester also submits that the State violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), because the same information related to Captain Arnold was known to the State during trial but was not made known to the defense.

Failure to disclose exculpatory material under *Brady* does not automatically require a new trial.

> Rather, reversal is required only if the undisclosed evidence is material in the sense that its suppression undermines confidence in the outcome of the trial, i.e., only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

(Punctuation omitted.) *Patillo v. State*, 258 Ga. 255, 261 (4) (c) (368 SE2d 493) (1988), quoting *United States v. Bagley*, 473 U. S. 667, 676 (105 SC 3375, 87 LE2d 481) (1985). Having found no reasonable

probability that the evidence is outcome determinative, see Division 3 herein, we similarly find no *Brady* violation.

5. Hester contends that the trial court erred in failing to suppress his custodial confession because it was taken after he invoked his right to counsel and was induced by hope of benefit.

The investigating officer testified at a *Jackson v. Denno* hearing that Hester executed a written waiver of his *Miranda* rights, he did not invoke his right to counsel, and agreed to speak with the officer.[3] The officer further testified that the statements were obtained without any inducement of benefit. Hester testified that he could not be certain about invoking his right to counsel prior to the first statement, but that he did request counsel before recording the second statement. The trial court found by a preponderance of the evidence that Hester was advised of each of his *Miranda* rights, that he understood those rights, and that he voluntarily waived his rights and gave his statement freely without any hope of benefit.

The trial court was entitled to weigh the credibility of witnesses at the *Jackson v. Denno* hearing and to accept the testimony of the more credible witness. See *Hardin v. State*, 269 Ga. 1 (494 SE2d 647) (1998). This Court must defer to the trial court's findings unless such findings are clearly erroneous. Id. Having reviewed the transcript of the hearing, we determine that the trial court's factual findings are not clearly erroneous, and that the evidence supports the conclusion that Hester's statement was knowingly and voluntarily made, and thus was properly admitted at trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 25, 2007.

*James G. Tunison, Jr.*, for appellant.

*J. David Miller, District Attorney, Bradfield M. Shealy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.

---

[3] Hester gave two custodial statements, receiving and waiving his *Miranda* rights prior to each. The first statement, taken a day after his arrest, was reduced to writing and signed by Hester. The second statement, consistent with the first, was videotaped almost two weeks after he had been placed in custody. It is the second statement that is the subject of the motion to suppress on appeal.