## A08A0370. THOMPSON v. THE STATE.
(662 SE2d 135)

BLACKBURN, Presiding Judge.

Following a jury trial based on a domestic dispute, Peter Thompson appeals his conviction on one count of simple assault[1] and two counts of battery,[2] contending that (1) the evidence was insufficient to support the verdict, (2) the trial court violated his Sixth Amendment right of confrontation by admitting an audiotape of a 911 call made by a person who did not testify at trial, (3) the trial court erred in admitting evidence allegedly withheld by the State in violation of

---

[1] OCGA § 16-5-20 (a) (1).
[2] OCGA § 16-5-23.1 (a).

discovery rules, (4) newly discovered evidence required a new trial, and (5) the trial court erred in failing to merge two counts of battery. For the reasons that follow, we affirm the simple assault conviction and sentence. The trial court erred in failing to merge the two counts of battery as the State proved only a single act of battery. We remand the case for re-sentencing on a single battery conviction and vacate the conviction and sentence on the second battery count.

Viewed in the light most favorable to the verdict, *Short v. State*,[3] the evidence shows that, in response to a 911 call, an officer arrived at an apartment to find Claudette Pope outside; she was scared, crying, bleeding profusely from her mouth, and had one eye swollen shut. The officer knocked on the apartment door and Thompson answered. The officer asked Thompson what had happened, and Thompson explained that he had had an argument with Pope and that she must have fallen down and gotten hurt. The officer noticed blood on the wall, doorway, and floor; Thompson then stated that Pope came after him with a knife. After noticing abrasions on Thompson's knuckles, the officer arrested him.

Thompson was charged with false imprisonment,[4] aggravated assault,[5] terroristic threat,[6] and two counts of battery.[7] In a jury trial, Thompson received a directed verdict for the false imprisonment and terroristic threat charges, and was found guilty of simple assault (as a lesser included charge) and two battery charges. The trial court later denied Thompson's motion for new trial, giving rise to this appeal.

1. Thompson challenges the sufficiency of the evidence, contending that the evidence was entirely circumstantial and that the State failed to exclude every other reasonable theory, i.e., his theory of self-defense, beyond a reasonable doubt. We disagree.

OCGA § 24-4-6 requires that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." The Supreme Court of Georgia has explained that

[q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every rea-

---

[3] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[4] OCGA § 16-5-41 (a).

[5] OCGA § 16-5-21 (a) (2).

[6] OCGA § 16-11-37 (a).

[7] OCGA § 16-5-23.1 (a).

sonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Punctuation omitted.) *Banks v. State*.[8]

Here, the evidence showed that the victim had reported that the perpetrator was in the apartment where Thompson was found alone. Thompson first told the officer that "nothing had happened" and then admitted to the officer that he had been arguing with Pope and that she must have fallen down, despite the blood spatters visible on the wall, door, and floor. Thompson then told the officer that Pope had tried to attack him with a knife that was still sitting in the kitchen sink along with other dishes. Under these facts, the jury was authorized to conclude that Pope's injuries were caused by Thompson and not in self-defense. See *Warbington v. State*[9] ("the jury is the arbiter of a witness'[s] credibility, and the jury also decides the reasonableness of hypotheses such as that presented by [the defendant]").

Thompson also speculates that because no witness testified to seeing Thompson hit Pope, her injuries could have been caused by something other than his fist. However, this merely identifies a question of fact, which is within the province of the jury. "Because the jury has heard the witnesses and observed them testify, it is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court." (Punctuation omitted.) *McKenzie v. State*.[10] Therefore, in light of the abrasions on Thompson's knuckles and his admission that he was fighting with Pope, the jury was entitled to resolve this question of fact in favor of the State.

2. Thompson also contends that the trial court erred by admitting a 911 audiotape in violation of his Sixth Amendment right to confrontation. We disagree.

In *Crawford v. Washington*,[11] the United States Supreme Court held that the admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. When the statement at issue is non-testimonial in nature,

---

[8] *Banks v. State*, 281 Ga. 678, 679 (1) (642 SE2d 679) (2007).

[9] *Warbington v. State*, 281 Ga. 464, 465 (1) (640 SE2d 11) (2007).

[10] *McKenzie v. State*, 283 Ga. App. 555, 560 (642 SE2d 187) (2007).

[11] *Crawford v. Washington*, 541 U. S. 36, 68 (124 SC 1354, 158 LE2d 177) (2004).

however, the State's normal rules regarding the admission
of hearsay apply.

(Footnote omitted.) *Pitts v. State*.[12]

During trial, the State tendered an audiotape of the 911 call
made by Pope, who, because she did not honor the State's subpoena,
did not testify. (The tape was authenticated by 911 operators on duty
that night.) Following Thompson's objection, the trial court ruled
that the call was not testimonial and admitted the tape.

In *Pitts*, supra, the Supreme Court of Georgia addressed a
similar situation involving a 911 tape and held that 911 tapes should
be reviewed on a case-by-case basis to determine whether they are
testimonial or not. Where the primary purpose of the call "is to
establish evidentiary facts, so that an objective person would recog-
nize that the statement would be used in a future prosecution, then
that phone call 'bears testimony' against the accused and implicates
the concerns of the Confrontation Clause." Id. at 289. On the other
hand, where the primary purpose of the call is "to avert a crime in
progress *or to seek assistance in a situation involving immediate
danger*, then the statements made during the phone call are not
testimonial." (Emphasis supplied.) Id.

Here, the caller advised that she had been hit, had a swollen face,
and was experiencing serious bleeding. Although she did advise of
the perpetrator's location in a different apartment, her call was
made with such immediacy after the attack that, upon the officer's
arrival, Pope was scared and crying, and blood was running down her
chin, shirt, and pants. In light of the caller's immediate need for
medical attention and the proximity in time between the call and the
attack, we hold that the trial court did not err in ruling that the call
was nontestimonial in nature, in that it was made to seek assistance
in a situation involving immediate danger. And although admissibil-
ity is not otherwise contested on appeal, we discern no clear error in
admitting the contents of the call under the res gestae exception to
the hearsay rule. See *Pitts*, supra at 291; *Christensen v. State*[13] (no
clear error where trial court ruled that victim's statement made
while still bleeding 18 minutes after incident was res gestae).

3. Thompson also contends that the trial court abused its
discretion in admitting testimony by an officer as to what Thompson
said to the officer, where the State had failed to disclose the
substance of the statement to Thompson until the first day of trial,
in violation of the State's discovery obligations. Because Thompson
himself knew of any statements he made to the officer, and the

---

[12] *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006).
[13] *Christensen v. State*, 245 Ga. App. 165, 168 (4) (537 SE2d 446) (2000).

State's failure to disclose the testimony was not a result of bad faith, and the trial court allowed Thompson time to interview the witness prior to the opening of evidence, we discern no reversible error.

Under OCGA § 17-16-4 (a) (1), no later than ten days before trial,

> [t]he prosecuting attorney shall . . . disclose to the defendant the substance of any . . . relevant oral statement made by the defendant, before or after arrest, in response to interrogation by any person then known by the defendant to be a law enforcement officer or member of the prosecuting attorney's staff if the state intends to use that statement at trial.

"In reviewing a trial court's decision whether to impose sanctions or take other corrective action as a result of the State's failure to comply with its discovery obligations, the appropriate standard of review is whether the trial court abused its discretion." *Williams v. State*.[14] Exclusion of evidence improperly withheld is proper "only when there has been a showing of prejudice to the defense and bad faith by the State." *Reece v. State*.[15]

Here, Thompson correctly asserts that the State failed to timely provide him with the content of an oral statement he made to police before arrest. During argument on the issue, however, the State explained to the trial court that, in light of the refusal of the victim to answer her subpoena, the State had to adjust its evidence at the last minute by calling the responding officer to testify as to Thompson's statements that Thompson and Pope had been arguing. Further, the State's counsel explained that he did not discover the substance of the statements until two days prior to trial (a Sunday) and that he informed Thompson's counsel the next day, stating that he did not intend to present that evidence in his case-in-chief. The following day, when the victim could not be located, and the State learned that Thompson would be arguing self-defense, the State informed the defense that it would use the officer's testimony regarding Thompson's statements. Based on these facts, the trial court ruled that Thompson had not shown that the State had acted in bad faith. Under this scenario, and in light of the change in circumstances arising from the victim's failure to answer her subpoena (despite efforts by the State to locate her), we discern no abuse of discretion by the trial court.

4. Thompson next contends that evidence that came to light

---

[14] *Williams v. State*, 226 Ga. App. 313, 314 (1) (485 SE2d 837) (1997).
[15] *Reece v. State*, 250 Ga. App. 1, 5 (2) (550 SE2d 414) (2001).

during a post-trial criminal contempt proceeding against the victim constituted newly discovered evidence warranting the grant of a new trial. We disagree.

> It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Punctuation omitted.) *Timberlake v. State*.[16] "A trial court's denial of a motion for new trial will not be reversed unless it affirmatively appears that the court abused its discretion. . . . [The trial court's] determination is entitled to great consideration." (Punctuation omitted.) *Young v. State*.[17]

Here, during the contempt proceeding against the victim following Thompson's trial, the victim testified that she was the aggressor. Based on this testimony, Thompson contends that his motion for new trial should have been granted, because the testimony was new evidence. However, Pope's alleged aggressor status was known to Thompson prior to trial, as was Pope's alleged willingness to testify about it. Thus, "[t]he proffer that [Thompson] did make shows that the proposed testimony was merely newly available, rather than newly discovered, evidence." *Bryant v. State*.[18] Accordingly, under the facts of this case, we discern no abuse of the trial court's discretion. See *Hester v. State*[19] ("[f]ailure to establish even one requirement of *Timberlake* is sufficient to deny a motion for new trial").

5. Finally, Thompson contends that the trial court erred by not merging the two counts of battery, for which he was sentenced to two consecutive twelve-month terms. Because the State failed to present evidence that two separate batteries were completed, we are constrained to vacate the sentence and remand.

Thompson correctly asserts that OCGA § 16-1-7 (a) prohibits convictions for more than one crime if one crime is included in another. Thompson's indictment listed two counts of battery, one for

---

[16] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).
[17] *Young v. State*, 269 Ga. 490, 491-493 (2) (500 SE2d 583) (1998).
[18] *Bryant v. State*, 274 Ga. 798, 800 (3) (560 SE2d 23) (2002).
[19] *Hester v. State*, 282 Ga. 239, 242 (3) (647 SE2d 60) (2007).

hitting Pope in her mouth and one for hitting her in her eye. In addressing the issue presented here, "the question is not whether medically distinguishable injuries were inflicted; the question is whether the State proved two completed crimes." *Brown v. State*.[20]

Here, the State presented no evidence that Thompson delivered the blows to Pope in two completed exchanges separated by a meaningful interval of time or with distinct intentions. See *Ingram v. State*[21] (vacating sentence for multiple convictions each based on "part of a continuous criminal act, committed at the same time and place and inspired by the same criminal intent"); *Davis v. State*[22] ("[t]he evidence adduced would not authorize the jury to conclude that the assault with the pistol was 'completed' between the time that appellant fired shots while on the run and the time when he caught up with his quarry and attempted to fire additional shots from a stationary position"). As the Supreme Court of Georgia has disapproved of its own prior holding that each of a series of shots fired in quick succession constituted a renewed assault, we likewise cannot hold here that the State proved that each of Pope's injuries was the result of a separate renewed battery. See *Montes v. State*.[23] Accordingly, we are constrained to vacate the sentence and remand for re-sentencing by the trial court.

*Judgment affirmed in part and vacated in part; case remanded for re-sentencing. Miller and Ellington, JJ., concur.*

DECIDED APRIL 18, 2008 —
RECONSIDERATION DENIED MAY 2, 2008 ▮▮▮▮▮▮▮▮▮

*Jennifer Lubinsky*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Charles P. Boring, Assistant District Attorneys*, for appellee.

---

[20] *Brown v. State*, 246 Ga. App. 60, 64 (1) (539 SE2d 545) (2000).
[21] *Ingram v. State*, 279 Ga. 132, 133 (2) (610 SE2d 21) (2005).
[22] *Davis v. State*, 186 Ga. App. 491, 493 (2) (367 SE2d 884) (1988).
[23] *Montes v. State*, 262 Ga. 473, 474-475 (1) (421 SE2d 710) (1992).